508 So.2d 1209 (1987)
Steve WALKER
v.
CITY OF MOBILE.
1 Div. 371.
Court of Criminal Appeals of Alabama.
February 10, 1987.
Rehearing Denied March 10, 1987.
Certiorari Denied June 26, 1987.
*1210 John D. Rivers, Mobile, for appellant.
J.D. Quinlivan, Jr., Asst. City Atty., Mobile, for appellee.
Alabama Supreme Court 86-825.
BOWEN, Presiding Judge.
Steve Walker was convicted in the circuit court of Mobile County of disorderly conduct (Alabama Code 1975, § 13A-11-7(a)), and resisting arrest (§ 13A-10-41), and sentenced to ten days in jail. On appeal, he contends that the State failed to prove that there was a lawful underlying arrest to support the charge of resisting arrest and that the disorderly conduct charge resulted from his conduct in resisting an unlawful arrest. We reject both arguments.

I
Shortly after midnight on October 22, 1985, Mobile Police Officer Robert Duff received a "prowler call" to Houston Street. About five minutes earlier, he had received another prowler call to an area three or four blocks away.
Officer Duff drove to Houston Street, stopped his car, and observed the defendant standing on the sidewalk "in front of somebody's house looking at their house." Officer Duff testified:
"As I saw him to my right there, he apparently heard something or heard my car running because he looked towards where I was at. And he immediately started walking down the sidewalk towards Dauphin Street. At Clearmont there's a night light, a street light. I waited till he got in that vicinity before I stopped him. I parked my car and pulled up behind him. I asked him to halt, I wanted to talk to him. He stopped momentarily and he said, I ain't got nothing to say to you. Leave me alone. Started walking off again. I said, I want to talk to you, hold up just a second. And I reached out and grabbed him. He *1211 stopped, turned around and started cursing. He was loud and disorderly. He said I ain't got to talk to you. Started cursing me, using names. And he turned around and walked off again. I grabbed him again. And when I went to grab him again he swung. I stepped back. When he did, I hit him behind the back [with a night stick]."
* * * * * *
"We both struggled a little bit. Finally he was subdued and handcuffed."
* * * * * *
"Like I said I didn't get a chance to talk to him at all because he kept pulling away and pushing me. He refused to talk to me."
* * * * * *
"I'm just saying he was in the area, he was acting suspicious and I tried to detain him and ask him whereabouts was he going and who he was. He refused to cooperate and took a swing at me."
Officer Duff stopped the defendant only to question him. Duff testified that he arrested the defendant "for being disorderly and trying to hit me, resisting arrest."
"Q. Did you arrest him for not answering your questions?
"A. I arrested him because he was cursing me and took a swing at me and resisting me after he was placed under arrest.
"Q. You put him under arrest when?
"A. Let me back up. When he started cursing me then I put my hands on him.
"Q. Did you arrest him then?
"A. I attempted to.
"Q. Did you say you are under arrest?
"A. I don't recall. I may have. I don't recall at this time.
"Q. Did you read him his rights?
"A. No, I didn't.
"Q. Did you say the words, you're under arrest?
"A. I may have. I don't recall. There was a lot of confusion about that time."
Officer Duff testified that he "grabbed" and "physically touched" the defendant one time.
"I stopped him the first time. Turned around and he said he didn't have anything to say to me, get the F on out of here and leave him alone. He was going up the road somewhere. I don't know where he was going. He turned around and walked off. I said I want to talk to you, find out some information, what you're doing here, tried to get that out. And he turned loose again. I went to grab him the third time. That's when he took a swing at me."
Apparently, from the context of this testimony, the reference to "grab him the third time" was with regard to the "third time" Officer Duff had attempted to stop the defendant.

II
Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Officer Duff was justified in initially stopping the defendant for questioning because, based upon "the totality of the circumstances the whole picture," he had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The totality of the circumstances in this case warranted Officer Duff in stopping the defendant for questioning. Worthy v. State, 473 So.2d 634, 637-38 (Ala.Cr.App.1985).
Officer Duff did not need probable cause to arrest the defendant in order to stop him.
"Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose `observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to `investigate the circumstances that provoke suspicion.' United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). `[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." `Ibid., (quoting Terry v. Ohio, supra, 392 U.S., at 29, 88 S.Ct., at 1884).

*1212 Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." Berkemer v. McCarty, 468 U.S. 420, 104 S.Ct. 3138, 3150-51, 82 L.Ed.2d 317 (1984).
See also Terry, 392 U.S. at 34, 88 S.Ct. at 1886, where Justice White stated the following in a specially concurring opinion:
"Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation."
A common type of situation in which a stopping on the street for investigation occurs is when "a stop is made because a person is found near the scene of a recent crime and the police wish to determine if that person was the perpetrator." W. LaFave and J. Israel, 1 Criminal Procedure § 3.8 (1984).
"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. See [Terry, 392 U.S.] at 23, 88 S.Ct. at 1881. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Adams v. Williams, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).
"Detentions are frequently sustained as reasonable when the suspect is discovered in proximity to a recently perpetrated offense." J. Cook, 1 Constitutional Rights of the Accused p. 52 (2d ed. 1985).
Section 15-5-30, Code of Alabama 1975, recognizes and sanctions a law enforcement officer's right to stop a person for questioning on less than probable cause by providing that an officer "may stop any person abroad in a public place whom he reasonably suspects is committing, has committed, or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions."
Since Officer Duff was justified in making a Terry-type stop, he was also justified in using reasonable force to effectuate that stop. "Inherent in the officer's right to stop a suspect and demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify the information given or to obtain information independently of his cooperation." State v. Fauria, 393 So.2d 688, 690 (La.1981). "In general, officers may take such steps as are `reasonably necessary to protect their personal safety and to maintain the status quo' so that the limited purposes of the stop may be achieved. United States v. Hensley, [469] U.S. [221], 105 S.Ct. 675, 684, 83 L.Ed.2d 604 (1985)." United States v. Jones, 759 F.2d 633, 636-37 (8th Cir.1985), cert. denied, ___ U.S. ___, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985). "Both a stop and an arrest are seizures within the meaning of the fourth amendment; by definition, once a person has been seized he or she has no right to leave, and the right to detain the suspect must include the right to enforce that detention by the use of force, if necessary." Williamson, The Dimensions of Seizure: The Concepts of "Stop" and "Arrest", 43 Ohio State L.J. 771, 816 (1982). Moreover, "most courts have held that use of force in making the seizure will not *1213 convert what is otherwise a Terry stop into an arrest." Id.
"It makes no sense to conclude that the officer's conduct must be viewed as an arrest from the outset simply because the restriction of defendant's liberty of movement was then complete and no significant new restraint followed when the police formally made the arrest. An investigatory stop is a complete restriction on liberty of movement for a time, and, if an arrest follows, the early stages of the arrest will not necessarily involve any new restraint of significance. A stopping for investigation is not a lesser intrusion because the restriction of movement is incomplete, but rather because it is briefer than an arrest, which (as emphasized in Terry) `is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows.' Thus an otherwise valid stop does not inevitably escalate to an arrest merely because the suspect's car was boxed in by police cars, because the police drew weapons, or because reasonable nondeadly force was used to achieve or continue the seizure." LaFave, "Seizures" Typology: Classifying Detentions of the Person to Resolve Warrant, Grounds, and Search Issues, 17 U. of Mich.J. of Law Reform 417, 428-29 (1984).
Although this issue has not been decided by the Supreme Court of the United States, "[l]ower courts have concluded that a Terry-stop may include a forcible detention." Constitutional Rights of the Accused at p. 71.
In United States v. Kapperman, 764 F.2d 786, 790, n. 4 (11th Cir.1985), the following observation was made:
"Yet, neither handcuffing nor other restraints will automatically convert a Terry stop into a de facto arrest requiring probable cause. Just as probable cause to arrest will not justify using excessive force to detain a suspect, Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the use of a particular method to restrain a person's freedom of movement does not necessarily make police action tantamount to an arrest. The inquiry in either context is reasonableness."
See also United States v. Aldridge, 719 F.2d 368, 371 (11th Cir.1983) ("[A]n investigative stop does not become an arrest merely because the detaining officer directs the subject out of a vehicle.... Nor does an officer's display of a weapon necessarily convert an investigative stop into an arrest.").

III
A person resisting an investigatory stop is not guilty of resisting arrest. Smith v. State, 704 S.W.2d 791, 793 (Tex. App.1985) (a person fleeing an investigatory stop is not evading arrest); People v. Coffey, 67 Cal.2d 204, 60 Cal.Rptr. 457, 468-469, 430 P.2d 15, 26-27 (1967) (The statute making it a crime for a person to resist an arrest by a police officer is inapplicable to detention for questioning.).
Here, we need not determine the exact point at which the temporary stop escalated into an arrest. Officer Duff testified that he attempted to arrest the defendant "[w]hen he started cursing me then I put my hands on him." The officer's testimony as to why he arrested the defendant is somewhat confusing: "[F]or being disorderly and trying to hit me, resisting arrest. Cursing me. * * * I arrested him because he was cursing me and took a swing at me and resisting me after he was placed under arrest."
The defendant was "formally" placed under arrest after he had been subdued. Officer Duff testified that he "officially" told the defendant he was under arrest "after the struggle was over with. I had time. Before I had my hands full. I wasn't going to say, let's take a break, you're under arrest. When you're out there fighting you have your hands full."
Even if Officer Duff did not attempt to arrest the defendant until after the defendant had attempted to strike him, the defendant would still be guilty of resisting arrest because even after Duff struck the defendant they "both struggled *1214 a little bit" before the defendant was subdued.
There is a question about whether or not the defendant could have been lawfully arrested for disorderly conduct merely for his use of profanity towards Officer Duff. Von Sleichter v. United States, 472 F.2d 1244 (D.C.1972); Comment, 4 Rutgers-Camden L.J. 160 (1972); Swann v. City of Huntsville, 455 So.2d 944, 950 (Ala.Cr.App. 1984); Annot., 14 A.L.R.4th 1252 (1982). See also Driskill v. State, 376 So.2d 678, 679 (Ala.1979). However, there is no doubt that Officer Duff was justified in arresting the defendant for disorderly conduct involving fighting or threatening behavior as defined in § 13A-11-7(a)(1).
The defendant's conviction for disorderly conduct was supported by evidence that he swung at and scuffled with Officer Duff.
"A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
"(1) Engages in fighting or in violent tumultuous or threatening behavior." Alabama Code 1975, § 13A-11-7(a)(1).
See also Hardy v. State, 455 So.2d 265 (Ala.Cr.App.1984); Nikolic v. City of Montgomery, 441 So.2d 997 (Ala.Cr.App. 1983).
After attempting to strike Officer Duff and continuing to struggle with him, the defendant was guilty of resisting arrest. By § 15-10-3, Officer Duff was authorized to "arrest any person without a warrant, on any day and at any time, for: (1) Any public offense committed or a breach of the peace threatened in his presence." Because the defendant was engaged "in the actual commission of a public offense," Officer Duff was not required to inform the defendant "of his authority and the cause of arrest." § 15-10-4. "[T]here are exceptions to the duty of an officer to make known his official capacity and the cause of arrest." Slaughter v. State, 47 Ala.App. 634, 638, 259 So.2d 840, cert. denied, 288 Ala. 751, 259 So.2d 845 (1972). A statement of the cause of the arrest is always mandatory except when the person is arrested in the commission of the act. Rutledge v. Rowland, 161 Ala. 114, 49 So. 461, 466 (1909).
The judgment of the circuit court is affirmed.
AFFIRMED.
TYSON, TAYLOR and PATTERSON, JJ., concur.
McMILLAN, J., concurs specially with opinion.
McMILLAN, Judge (concurring specially).
The facts in the present case constitute a classic "investigatory stop" as defined in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The facts unquestionably support a finding that the law enforcement officer was justified in initially stopping the appellant.
There is no doubt that Officer Duff had an objective basis for formulating a particularized suspicion of the person stopped. United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The two radio dispatches specifically describing a man prowling in a specific residential block enabled Officer Duff to formulate a particularized suspicion as to the man he observed acting suspicious and walking in the same location as communicated to him from a radio dispatch which described the identical circumstances.
Clearly, Officer Duff's physical observation of the defendant, and specifically his observation of the defendant's location, his method of travel, and his suspicious behavior constituted sufficient justification for an investigatory stop in light of a radio dispatch which described the same situation. Thus, Officer Duff did have a "particularized and objective basis for suspecting [this] particular person." United States v. Cortez, supra.
Of course, every so-called investigatory stop may not be justified. United States v. Cortez, supra. Had Officer Duff chosen to disregard the particularities of the radio dispatch and had he made a stop resulting from something less than an objective basis *1215 for formulating a particularized suspicion of the person stopped, then the stop would have been unwarranted. United States v. Cortez, supra. Had the law enforcement officer, after receiving a radio dispatch describing a lone, suspicious-acting prowler in a specific residential block, chosen then to randomly stop two men who were not acting suspiciously, riding in a car on a heavily traveled road away from the specific block given by the radio dispatch, then, of course, the stop would not have resulted from an objective basis for formulating a particular suspicion of those particular persons and, thus, would not have satisfied the requisite criteria for initiating a stop.
The law enforcement officer, in the present case, had an objective basis for a particularized suspicion of the person stopped. The law enforcement officer acted properly and is to be commended for his attention to duty.