841 So.2d 1222 (2002)
Terrell TELFARE
v.
CITY OF HUNTSVILLE.
1000357.
Supreme Court of Alabama.
January 18, 2002.
Opinion on Denial of Rehearing June 14, 2002.
*1224 Joe N. Lampley, Huntsville, for appellant.
George W. Royer, Jr., of Sirote & Permutt, P.C., Huntsville, for appellee.
Rehearing brief filed by George W. Royer, Jr., of Lanier Ford Shaver & Payne, P.C., Huntsville, for appellee.
Michael L. Fees and C. Gregory Burgess of Fees & Burgess, Huntsville, for amicus curiae Alabama Association of Chiefs of Police, in support of the application for rehearing.
Kendrick E. Webb of Webb & Eley, P.C., Montgomery, for amicus curiae Alabama Sheriff's Association, in support of the application for rehearing.
Kenneth Smith, Montgomery, for amicus curiae Alabama League of Municipalities (on rehearing).
MOORE, Chief Justice.
Terrell Telfare sued the City of Huntsville (hereinafter "the City") and D. McCarver, a police officer for the City. Telfare alleged that he was injured when Officer McCarver used what he says was excessive force to effectuate an allegedly unlawful arrest. The City filed a motion to dismiss, claiming that it was entitled to discretionary-function immunity under § 6-5-338, Ala.Code 1975. The trial court granted the City's motion to dismiss, and Telfare appeals. We affirm in part, reverse in part, and remand.

I.
On the evening of February 22, 1999, Telfare visited JJ's Lounge in Huntsville with his girlfriend Lawonda. While they were at the lounge, an altercation occurred between Lawonda and another female, who was speaking to Telfare. After the confrontation, Telfare told Lawonda she should leave and suggested that he drive her home. As the two left the lounge, several women followed and attacked Lawonda.
Telfare attempted to break up the fight; he retrieved Lawonda from the group. The couple retreated to the safety of Telfare's automobile, and prepared to leave. At that moment, Huntsville Police Officer D. McCarver, who had apparently been summoned because of the fight, arrived at the scene. As Officer McCarver got out of his car, the females who had been fighting *1225 with Lawonda indicated that Telfare and Lawonda had instigated the altercation. According to the testimony of a witness, some of the women started yelling, "Get them; get him." Officer McCarver then approached Telfare's car, pulled his gun, and ordered Telfare to get out of the car. Telfare got out, and Officer McCarver ordered Telfare to lie on the ground. Telfare, however, refused to lie on the ground as Officer McCarver instructed. When Telfare refused, Officer McCarver holstered his pistol, retrieved an expandable baton, and struck Telfare about his legs with the baton. Telfare continued to refuse to comply with the officer's demands that he lie on the ground, and he attempted to walk away from Officer McCarver.
The witness, a friend of Telfare's, testified that he implored Telfare to comply, and that he eventually assisted in getting him to lie on the ground. Shortly thereafter, several other police officers arrived at the scene and assisted Officer McCarver in handcuffing Telfare. Officer McCarver then arrested Telfare on charges of disorderly conduct, harassment, and resisting arrest. Telfare sustained numerous contusions on his lower body when he was hit with the baton. On April 26, 2000, Telfare filed a complaint in the Madison Circuit Court against Officer McCarver and the City. The basis of Telfare's suit was that Officer McCarver had used excessive force during his arrest of Telfare. The City filed a motion to dismiss the complaint on May 23, 2000, and on June 20, 2000, Telfare filed a response to the City's motion to dismiss, which included a sworn statement of an alleged eyewitness to the altercation between Officer McCarver and Telfare. On June 30, 2000, Telfare submitted to the court an amended complaint, in which he completely restated his claims against the defendants.
On July 19, 2000, the circuit court, apparently acting on Telfare's initial complaint, dismissed Telfare's claims against the City. Telfare then filed a motion for reconsideration, indicating that he had filed an amended complaint. On August 3, 2000, the circuit court granted Telfare's motion to reconsider, set aside its previous order of dismissal, and allowed Telfare to proceed on his amended complaint.
Telfare's amended complaint, based on the same operative facts as was his original complaint, alleged only negligence-based state-law tort claims against McCarver and the City of Huntsville: In Count I, which he entitled "Excessive Use of Force," Telfare alleged that McCarver's negligence, carelessness, and lack of skill resulted in McCarver's having to use excessive force in perfecting an unlawful arrest. In Count II, entitled "False Arrest," Telfare alleged that Officer McCarver's arrest was negligent and unlawful because, he says, there was no probable cause for the arrest. In Count III, "False Imprisonment," Telfare alleged that "McCarver, acting within the line and scope of his authority and employment as a police officer of the City of Huntsville, negligently caused [Telfare] to be unlawfully detained, restrained, and imprisoned...." In Count IV, entitled "Assault and Battery," Telfare alleged that "McCarver committed a negligent assault and battery upon him...." In Count V, entitled "Excessive Use of Force," Telfare alleged that McCarver and the City had negligently deprived Telfare of his constitutional rights by McCarver's "assault and battery, false arrest, false imprisonment and excessive use of force ... while perfecting an unlawful arrest ... in the line and scope of his employment as a police officer of the City of Huntsville." In Count VI, entitled "False/Unlawful Arrest," Telfare again alleged that McCarver's actions, performed "within the scope of his authority as a *1226 police officer and agent of the City of Huntsville," negligently led to Telfare's allegedly unlawful arrest. Telfare sought damages and attorneys fees pursuant to 42 U.S.C. § 1988. In Count VII, also entitled "False Imprisonment" (see count III), Telfare alleged that McCarver, while "acting within the line and scope of his authority and employment as a police officer of the City of Huntsville, negligently ... and unlawfully detained, restrained, and imprisoned [Telfare] ..." and thus violated his constitutional rights.
Again, the City filed a motion to dismiss, and Telfare opposed the motion. On September 15, 2000, the trial court granted the City's motion to dismiss the amended complaint as to the City, on the basis that the City was immune from such claims. The trial court then certified its order of dismissal as a final judgment pursuant to Rule 54(b), Ala.R.Civ.P.[1] Telfare filed a motion for reconsideration, which the trial court denied on October 6, 2000.

II.
Telfare and the City disagree as to the standard of review we are to apply in this case. Telfare argues that the City's motion was clearly denominated and treated by the trial court as a motion to dismiss. Thus, Telfare suggests, we should treat the motion as a Rule 12(b)(6), Ala. R.Civ.P., motion. He argues that granting the motion was improper because "it is the rare case involving the defense of discretionary immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6), A.R.Civ.P." Patton v. Black, 646 So.2d 8, 10 (Ala.1994).
The City argues that, despite the fact that it entitled the motion as a motion to dismiss, the trial court essentially entered a summary judgment in its favor pursuant to Rule 56, Ala.R.Civ.P. It argues that we should, therefore, review the order under a summary-judgment standard of review.
Clearly, the City filed a motion styled "Motion ... to Dismiss Amended Complaint," and the trial court apparently believed that it had before it a Rule 12(b)(6), Ala.R.Civ.P., motion to dismiss. However, Telfare submitted in response to the City's Rule 12(b)(6) motion to dismiss a detailed response including a lengthy, sworn evidentiary statement from an alleged eyewitness to the events.
Rule 12(b), Ala.R.Civ.P., provides, in pertinent part: "If, on a motion asserting the defense numbered (6) to dismiss for failure ... to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ...." (Emphasis added.) "When matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment, Rule 12(b), Ala.R.Civ.P.; this is the case regardless of what the motion has been called or how it was treated by the trial court." Hornsby v. Sessions, 703 So.2d 932, 937-38 (Ala. 1997) (citation omitted). Because Telfare presented testimony not included in the pleadings, and because the trial court considered that information, the City's motion must be considered as one for summary judgment, and this Court must review the trial court's judgment by using the appropriate standard under Rule 56, Ala. R.Civ.P.
A summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together *1227 with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P. When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the party is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In determining whether a summary judgment is proper, a court must construe the evidence in a light most favorable to the nonmoving party, and all reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993).
Here, Telfare submitted a detailed factual account of the facts underlying his claims in the form of a statement from an eyewitness. While not admitting the correctness of those facts, the City, for purposes of their motion, assumes those facts to be correct. The City argues, however, that even construing the evidence in a light most favorable to Telfare, it is still entitled to a judgment as a matter of law.

III.
The complaint at issue is Telfare's amended complaint. In Barnett v. Mobile County Personnel Bd., 536 So.2d 46, 49 (Ala.1988), we stated that "`[a]n amended pleading pro tanto supersedes a pleading which it amends ....'" (quoting Zeigler v. Baker, 344 So.2d 761 (Ala.1977)). See also Holley v. St. Paul Fire & Marine Ins. Co., 396 So.2d 75 (Ala.1981) (noting that where an amended pleading is filed, the original pleading is no longer functional, and, as a result, a ruling on a motion to dismiss a previous complaint is unnecessary). The order of dismissal at issue in this case is the trial court's September 15, 2000, order dismissing the claims against the City in Telfare's amended complaint.

IV.
In Counts I-IV of his amended complaint, Telfare asserted various state-law claims alleging negligence-based torts against the City, arguing that the City is liable for McCarver's negligence. Telfare asserts that those claims were correctly brought against the City, citing § 11-47-190, Ala.Code 1975, which allows claims to be brought against a municipality for the negligent actions of its agents.
However, the City argues that § 6-5-338(a), Ala.Code 1975, grants Officer McCarver immunity from tort liability arising out of the performance of his discretionary functions so long as those functions are within the line and scope of his official duties. The City further asserts that § 6-5-338(b) extends this immunity to the City. Section 6-5-338(a) provides: "Every [law-enforcement] officer ... shall have immunity from tort liability arising out of [his or her] conduct in performance of any discretionary function within the line and scope of [his or her] law enforcement duties." Subsection (b) makes it clear that this immunity is extended to "governmental units or agencies authorized to appoint [law-enforcement] officers."
In Ex parte City of Gadsden, 781 So.2d 936 (Ala.2000), we squarely addressed the issue of a municipality's liability *1228 for a police officer's conduct. In Ex parte City of Gadsden we stated: "[W]e must first determine whether [the officer] was engaged in performing a discretionary function." 781 So.2d at 938. Discretionary functions are those functions as to which "there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Wright v. Wynn, 682 So.2d 1, 2 (Ala.1996). Generally, arrests and attempted arrests are classified as discretionary functions.
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
". . . .
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons ...."
Ex parte Cranman, 792 So.2d 392, 405 (Ala.2000) (second emphasis added).
Telfare contends, however, that Officer McCarver was not engaged in a discretionary function because, he says, Telfare was arrested for a misdemeanor that was not committed in Officer McCarver's presence.[2] Rule 4.1(a)(1), Ala.R.Crim.P., states:
"(1) A law enforcement officer may arrest a person without a warrant if:
"(i) The law enforcement officer has probable cause to believe that a felony has been committed, or is being committed, and that the person to be arrested committed it, or
"(ii) Any offense has been committed in the law enforcement officer's presence or view, or
"(iii) The arrest is otherwise authorized by statute, such as Ala.Code 1975, §§ 32-5-171, 32-5A-191, 15-10-3."
(Emphasis added.) Similarly, § 15-10-3(a), Ala.Code 1975, provides:
"(a)n officer may arrest a person without a warrant, on any day and at any time in any of the following instances:
"(1) If a public offense has been committed or a breach of the peace threatened in the presence of the officer.

"(2) When a felony has been committed, though not in the presence of the officer, by the person arrested.
"(3) When a felony has been committed and the officer has reasonable cause to believe that the person arrested committed the felony.
"(4) When the officer has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed.
"(5) When a charge has been made, upon reasonable cause, that the person arrested has committed a felony.

"(6) When the officer has actual knowledge that a warrant for the person's arrest for the commission of a felony or misdemeanor has been issued....
"(7) When the officer has reasonable cause to believe that a felony or misdemeanor has been committed by the person arrested in violation of a protection order....

*1229 "(8) When an offense involves domestic violence ... and the arrest is based on probable cause, regardless of whether the offense is a felony or misdemeanor."
The City correctly asserts that Officer McCarver was effectuating an arrest. However, the record before this Court indicates that Telfare was apparently arrested for misdemeanor offenses not committed in the presence of Officer McCarver. Generally, Alabama's Rules of Criminal Procedure and the statutes quoted above do not allow law-enforcement officers the discretion to arrest alleged wrongdoers for misdemeanors not committed in the presence of the arresting officer.[3]
The City implies that Telfare was arrested for resisting arrest, a misdemeanor committed in the presence of Officer McCarver. The City reasons that this was a sufficient basis for Officer McCarver to effectuate a lawful arrest. Previous cases make it clear, however, that resisting an unlawful arrest is appropriate under certain circumstances. "The law in Alabama is clear that, to a limited degree, a party is justified in attempting to resist an unlawful arrest. A party may use reasonable force to extricate himself from an unlawful arrest." Ex parte Wallace, 497 So.2d 96, 97 (Ala.1986).
Here, viewing the evidence in a light most favorable to Telfare as the nonmovant, we must conclude that Officer McCarver arrested Telfare for various misdemeanors, none of which was committed in Officer McCarver's presence. Because there is no evidence in the record tending to show that Officer McCarver was pursuing a discretionary function, i.e., was effectuating a lawful arrest, the City has failed to demonstrate that it is entitled to immunity. Considering the evidence in a light most favorable to Telfare, as we must, we believe the trial court erred in dismissing Telfare's state-law claims. We, therefore, reverse that portion of the trial court's judgment.

V.
In Counts V-VII of his amended complaint, Telfare alleged that the defendants had violated his civil rights and that the City should be held liable, essentially on a theory of vicarious liability. In Monell v. Department of Social Services of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court addressed this specific issue. There, the Supreme Court concluded:
"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."
436 U.S. at 694, 98 S.Ct. 2018.
"Stated differently, a municipality may be held liable under § 1983 only if `"action pursuant to official municipal policy of some nature caused a constitutional tort".' As the Monell Court explained, `it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'" *1230 Cremeens v. City of Montgomery, 779 So.2d 1190, 1197 (Ala.2000) (citations omitted). Here, Telfare's complaint does not even hint that his treatment was the result of any official policy of the City. Therefore, the trial court correctly dismissed Counts V-VII against the City.

VI.
As to Telfare's state-law claims against the City, the judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed. This opinion should not be construed to preclude the City from filing a motion for a summary judgment after further discovery is conducted.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
SEE, BROWN, JOHNSTONE, and HARWOOD, JJ., concur.
HOUSTON, LYONS, WOODALL, and STUART, JJ., concur in part and dissent in part.
HOUSTON, Justice (concurring in part and dissenting in part).
I would affirm; therefore, I concur in part and dissent in part. If the doctrine of discretionary authority in a case involving an alleged illegal arrest is coextensive with, and determined by, the question whether the officers effectuating the arrest had probable cause to arrest, then the issue of immunity would never come into playthe liability of the officer, and, thus, what immunity he enjoys, would simply be conclusively determined by whether the officer had committed a tort by arresting without probable cause.
The issue, thus, is not whether probable cause existed for Telfare's arrest, but rather whether McCarver was, at the time of the arrest, engaged in the exercise of a discretionary function. This Court has specifically recognized this rule by noting that actual probable cause to make an arrest is not required in determining whether an officer was engaged in the exercise of a discretionary function in deciding whether to make an arrest. See, e.g., Ex parte Duvall, 782 So.2d 244, 248 (Ala.2000); Ex parte City of Montgomery, 758 So.2d at 570 (because there is no "hard and fast rule" regarding whether actual probable cause exists to make an arrest, an officer is entitled to discretionary-function immunity for exercising his or her judgment in whether to make an arrest).
LYONS, WOODALL, and STUART, JJ., concur.

On Application for Rehearing
MOORE, Chief Justice.
On rehearing, the City of Huntsville argues that this Court misapprehended its argument on original submission. It contends that its arguments can be categorized as follows: (1) that Officer McCarver was not effectuating an arrest, but was rather engaging Terrell Telfare in a lawful investigatory detention; and (2) that Officer McCarver had the right to place Telfare prone, facedown on the ground for Officer McCarver's safety. In support of its contentions, the City cites Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In Terry, the United States Supreme Court held "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. 1868. However, the City overlooks the fact that in order to justify such a Terry stop, "the police officer must be able to point to specific and articulable facts which, taken together *1231 with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21, 88 S.Ct. 1868 (emphasis added). This singular requirement illustrates why the City's application for rehearing must fail: neither Officer McCarver nor the City has presented any facts to support the City's argument.
Similarly, we agree with the City that "`officers may take such steps as are "reasonably necessary to protect their personal safety and to maintain the status quo" so that the limited purposes of the [investigatory] stop may be achieved.'" Walker v. City of Mobile, 508 So.2d 1209, 1212 (Ala.Crim.App.1987) (quoting United States v. Jones, 759 F.2d 633, 636-37 (8th Cir.1985)). However, the critical distinction between Walker and this case is that in Walker, "Officer Duff testified." 508 So.2d at 1210. Here, neither Officer McCarver nor the City offered any testimony or evidence as to the objective events or the subjective thoughts that surrounded Officer McCarver's actions. Therefore, we do not reach the City's second argument. The City's application for rehearing is overruled.
APPLICATION OVERRULED.
HOUSTON, SEE, BROWN, JOHNSTONE, and HARWOOD, JJ., concur.
LYONS, WOODALL, and STUART, JJ., dissent.
NOTES
[1] Officer McCarver remains a defendant in this action; the claims against him are still pending.
[2] Telfare was ultimately charged with disorderly conduct, harassment, and resisting arrest.
[3] Section 15-10-3(a)(4), (6), (7), and (8), Ala. Code 1975, provide certain exceptions to this general proposition. However, the City has presented no evidence indicating that these exceptions apply here.