920 So.2d 1075 (2005)
Michael SWAN
v.
CITY OF HUEYTOWN.
No. 1031058.
Supreme Court of Alabama.
April 15, 2005.
Rehearing Denied July 15, 2005.
*1076 Stan Brobston of Brobston & Brobston, P.C., Bessemer, for appellant.
Mark W. Lee and Dorothy A. Powell of Parsons, Lee & Juliano, P.C., Birmingham, for appellee.

On Application for Rehearing
SEE, Justice.
The opinion of November 5, 2004, is withdrawn, and the following is substituted therefor.[1]
Michael Swan appeals from a summary judgment entered by the Jefferson Circuit Court in favor of the City of Hueytown based on Hueytown's defense of municipal immunity. We affirm the summary judgment.

I. Facts and Procedural History
On May 3, 2000, Officer Ben Williams of the Hueytown Police Department stopped a vehicle in which Michael Swan was a passenger. Officer Williams asked to see the driver's licenses of both the driver of the vehicle and the passenger, Swan. Officer Williams radioed the dispatcher for the Hueytown Police Department who, using the information Officer Williams gave him, searched the National Crime Information Center ("NCIC") database to determine *1077 whether there were any outstanding warrants on Swan.
Officer Williams does not remember what specific information he provided the dispatcher; however, he testified that normally he would have provided the detainee's driver's license number, his or her name and date of birth, or his or her Social Security number. The dispatcher alerted Officer Williams that the City of Birmingham had a possible "positive," i.e., outstanding, warrant on Michael Swan. Officer Williams told the dispatcher to confirm the existence of the warrant, and the dispatcher telephoned the City of Birmingham to do so.
Officer Williams testified that when confirming a possible positive warrant, the dispatcher provides information on the suspect from the NCIC screen on the suspect, which lists the suspect's name, date of birth, Social Security number, height, weight, and hair color. The NCIC screen on the suspect also lists the warrant information, including the "place number," the date the warrant was issued, the charge, and the entity issuing the warrant.
Officer Williams received from the dispatcher information that the City of Birmingham had two outstanding warrants on a Michael Swan. Later evidence indicated that the outstanding warrants were for "Michael Swann," the last name spelled with two n's, not one. The dispatcher and Officer Williams, speaking by police radio, apparently failed either to recognize or to react to the difference in spelling between the two last names. Officer Williams arrested Swan and took him to the Hueytown jail. From there, Swan was taken to the Birmingham jail. Sometime later, the City of Birmingham determined that there was no arrest warrant outstanding for Michael Swan and took him back to the Hueytown jail so that he could be released. Swan was released approximately four hours after the initial stop.
On May 3, 2002, Swan sued the City of Birmingham[2] and the City of Hueytown. The City of Hueytown responded, asserting that it was immune from liability pursuant to § 6-5-338, Ala.Code 1975 (providing peace officers immunity from tort liability for conduct in the line of duty), and § 11-47-190, Ala.Code 1975 (providing municipalities immunity from tort liability except in those cases where the alleged injury involved "neglect, carelessness or unskillfulness of some agent"). On March 5, 2003, Hueytown moved for a summary judgment, and, on October 27, 2003, the trial court entered a summary judgment for Hueytown, relying solely on § 6-5-338, Ala.Code 1975. Swan appeals.

II. Standard of Review
In reviewing a trial court's ruling on a motion for a summary judgment, we apply the same standard the trial court applied initially in granting or denying the motion. Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999).
"The principles of law applicable to a motion for summary judgment are well settled. To grant such a motion, the trial court must determine that the evidence does not create a genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact."
742 So.2d at 184. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial *1078 judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).

III. Analysis
Swan argues that he suffered injuries as a result of Officer Williams's "failure to inspect and determine the true identity of the arrestee...." (Swan's brief at 21-22.) Hueytown argues (1) that Officer Williams and the dispatcher are entitled to State-agent immunity pursuant to § 6-5-338, Ala.Code 1975, and (2) that Hueytown is entitled to substantive immunity as set forth in Rich v. City of Mobile, 410 So.2d 385 (Ala.1982).

A. Actions of Officer Williams
Section 6-5-338(a), Ala.Code 1975, provides immunity from tort liability for every peace officer whose duties include:
"the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state ...."
The officer "shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." § 6-5-338(a), Ala. Code 1975. Immunity extends "only to peace officers and governmental units or agencies authorized to appoint peace officers." § 6-5-338(b), Ala.Code 1975; Telfare v. City of Huntsville, 841 So.2d 1222, 1227 (Ala.2002).
Immunity from tort liability must arise out of the peace officer's performance of "any discretionary function within the line or scope of his or her" law-enforcement duties. Section 6-5-338(a), Ala.Code 1975. Thus, under § 6-5-338, a law-enforcement officer is entitled to State-agent immunity if the officer was performing a discretionary function. Ex parte City of Gadsden, 781 So.2d 936, 938 (Ala.2000).
"Since [Ex parte] Cranman[, 792 So.2d 392 (Ala.2000)], we analyze immunity issues in terms of `State-agent' immunity rather than `under the dichotomy of ministerial versus discretionary functions.' [[3]] ... Thus, we will address the applicability of peace-officer immunity under the principles set forth in Cranman." Howard v. City of Atmore, 887 So.2d 201, 203 (Ala.2003)(quoting Ex parte Hudson, 866 So.2d 1115, 1117 (Ala.2003)).[4] In Ex parte Cranman, 792 So.2d 392 (Ala.2000), we held:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or

*1079 "(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students."
792 So.2d at 405. Paragraph (4) of the Cranman test is directly applicable to the case at hand; it provides:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's ... exercising judgment in enforcement of the criminal laws of the State, including but not limited to, law-enforcement officers' arresting or attempting to arrest persons."
(First emphasis in original; second emphasis added.) Thus, the Cranman standard answers in the affirmative the question whether arresting a person is an exercise of judgment  a "discretionary function"  and therefore clothes the officer in State-agent immunity. As this Court also stated in Telfare, arrests and attempted arrests are generally classified as actions requiring an officer to exercise judgment. 841 So.2d at 1228.
Even if the Cranman standard did not expressly provide that "law-enforcement officers arresting or attempting to arrest persons" are clothed in State-agent immunity, Officer Williams's gathering of information and subsequent arrest of Swan demonstrates that he was exercising his judgment. Officer Williams testified that the information he relayed to the dispatcher was Swan's driver's license number, his name and date of birth, or his Social Security number. In choosing which information to relay to the dispatcher so that the dispatcher could run the NCIC check and, in later deciding to arrest Swan upon confirmation a warrant was outstanding, Officer Williams was "exercising judgment in the enforcement of criminal laws" within the meaning of Cranman.

B. Actions of the Dispatcher
Swan argues that the actions of the dispatcher for the Hueytown Police Department in using the NCIC database caused his unlawful arrest. We must determine (1) whether the dispatcher is a peace officer within the meaning of § 6-5-338 and, (2) if so, whether the dispatcher was engaged in "arresting or attempting to arrest" a person when he ran the NCIC check, communicated to Officer Williams that the check indicated a possible positive warrant, telephoned the City of Birmingham to confirm the existence of the warrant, and again communicated to Officer Williams that there were two outstanding warrants for Michael Swann.
Swan does not dispute that the police dispatcher is a peace officer as contemplated by § 6-5-338. Therefore, for purposes of this appeal we assume that the police *1080 dispatcher in this case is a "peace officer." See generally Howard v. City of Atmore, supra (a sworn law-enforcement officer who was serving as a jailer/dispatcher while recuperating from surgery was a "peace officer" within the meaning of § 6-5-338); see also Houston County Comm'n v. Hart, 477 So.2d 321, 322 (Ala.1985)(a dispatcher is a trained law-enforcement officer and thus entitled to the minimum starting salary for all county law-enforcement officers).
Swan does not, however, address the dispositive question under Cranman: whether the dispatcher was engaged in "arresting or attempting to arrest" a person. Officer Williams's uncontradicted testimony is that the dispatcher's actions in receiving from Officer Williams the information necessary to run the NCIC check, running the NCIC check, communicating with Officer Williams as to whether there was a possible positive warrant, telephoning the city that issued the warrant to confirm the existence of the warrant, and again communicating to Officer Williams whether there was an outstanding warrant, are a routine part of making an arrest. Had Officer Williams had all of the information gathered by the dispatcher at hand, or had the dispatcher been another officer on the scene providing the information, no one would argue that the dispatcher's actions were not part and parcel of the arrest. Therefore, we conclude that the dispatcher in performing the duties summarized above was "arresting or attempting to arrest" a person and that he is, under the Cranman standard, entitled to State-agent immunity.
Swan does not address the foregoing clear language of the Cranman standard. Instead, he dissects the arrest and argues that the dispatcher employed by the Hueytown Police Department failed to compare the information provided in the NCIC check with the information provided by Officer Williams. Citing City of Bayou La Batre v. Robinson, 785 So.2d 1128 (Ala. 2000), Swan argues that the dispatcher was engaged in an administrative duty[5] and thus not exercising the type of judgment that would entitle the dispatcher and hence Hueytown to immunity.[6] The Bayou La Batre case on which Swan relies is not, however, an arrest case. In Bayou La Batre, this Court held that the magistrate, when she faxed a warrant-recall order to the police department upside down so that the police department received a blank page, was performing an administrative duty that did not involve the exercise of judgment. 785 So.2d at 1133. In so holding, we noted that a magistrate is an official whose duties are a blend of judicial *1081 and administrative duties and that in faxing the recall order the magistrate was engaged in an administrative duty.
In this case, the dispatcher performed the following law-enforcement duties: he received the information from Officer Williams necessary to run the NCIC check; he ran the NCIC check; he communicated to Officer Williams that there was a possible positive warrant; he telephoned to confirm the existence of the warrant, which necessarily required the relaying of certain information from the NCIC check; and he communicated to Officer Williams that two outstanding warrants had been confirmed. Breaking discretionary actions into increasingly minute ministerial components circumvents the intention of Article I, § 14, Ala. Const.1901.[7] In this case, however, even if we were to break the arrest into component tasks as Swan would have us do, we would conclude that the dispatcher was exercising discretion.[8]

C. Substantive Immunity
Hueytown argues that it is entitled to substantive immunity as provided for in Rich v. City of Mobile, 410 So.2d 385 (Ala.1982). Because we hold that Officer Williams and the dispatcher are entitled to State-agent immunity under § 6-5-338, Ala.Code 1975, we pretermit discussion of the substantive-immunity issue.

IV. Conclusion
We hold that Officer Williams and the City of Hueytown[9] are entitled to State-agent immunity from civil liability because both Officer Williams and the dispatcher were "exercising judgment in the enforcement of the criminal laws of the State ... [as] law-enforcement officers' arresting or attempting to arrest persons." Therefore, we affirm the trial court's summary judgment in favor of Officer Williams and the City of Hueytown.
APPLICATION GRANTED; OPINION OF NOVEMBER 5, 2004, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
NABERS, C.J., and STUART, BOLIN, and PARKER, JJ., concur.
SMITH, J., concurs in the result.
LYONS, HARWOOD, and WOODALL, JJ., concur in part and dissent in part.
LYONS, Justice (concurring in part and dissenting in part).
I authored the opinion on original submission in this case. While I am now persuaded that Officer Williams's actions involved the type of judgment to which State-agent immunity applies, I must dissent from that part of the main opinion that concludes that the dispatcher is also entitled to State-agent immunity.
*1082 Swan argues that he was injured as a result of Officer Williams's "failure to inspect and determine the true identity of the arrestee...." (Swan's brief at 21-22.) Hueytown argues that it is immune from liability pursuant to § 6-5-338, Ala.Code 1975. "Since [Ex parte] Cranman [, 792 So.2d 392 (Ala.2000)], we analyze immunity issues in terms of `State-agent' immunity rather than `under the dichotomy of ministerial versus discretionary functions.'" Howard v. City of Atmore, 887 So.2d 201, 203 (Ala.2003) (quoting Ex parte Hudson, 866 So.2d 1115, 1117 (Ala.2003)). In Cranman, we restated the law of State-agent immunity as follows:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
". . . .
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons ...."
Cranman, 792 So.2d at 405 (first emphasis original; second emphasis added).
It is undisputed that the information Officer Williams relayed to the police dispatcher consisted of either Swan's driver's license number, his name and date of birth, or his Social Security number. I agree with the majority that in electing to provide any one of these three alternative items of identifying information, beyond merely providing the detainee's name, to the dispatcher in order to run the NCIC check, Officer Williams was "exercising judgment in the enforcement of the criminal laws" within the meaning of Cranman. Further, once the dispatcher confirmed, based on the information Officer Williams had provided him, that there existed a "positive warrant" on Swan, Williams made the decision to arrest Swan, also an exercise of judgment within the meaning of Cranman.
Swan also claims that the actions of the Hueytown Police Department dispatcher in using the NCIC database caused his unlawful arrest. I disagree with the majority's holding that the dispatcher was "arresting or attempting to arrest" Swan when he ran the NCIC check and relayed to Officer Williams the fact of the existence of an outstanding warrant. It was Officer Williams who arrested Swan, not the dispatcher. The dispatcher's actions are more akin to those that have been labeled by this Court as administrative and did not involve the type of judgment contemplated by Cranman.
In City of Bayou La Batre v. Robinson, 785 So.2d 1128 (Ala.2000), we held that a magistrate's failure to properly fax a warrant-recall order did not involve the type of judgment contemplated by Cranman that would shield the municipality from liability. We held that "the magistrate... was, when she faxed the warrant-recall order to the police department upside down, executing an administrative duty that did not involve the exercise of judgment." Bayou La Batre, 785 So.2d at 1133. We have also held that steering a police vehicle around potholes does not involve the type of judgment to which immunity applies. Town of Loxley v. Coleman, 720 So.2d 907, 909 (Ala.1998). I do not believe that the actions of the dispatcher in the instant case, i.e., entering information into a computer database and subsequently reading and interpreting the results of a search based on that information, constitute an arrest or an attempt to arrest, or that they otherwise involve the exercise of judgment in the enforcement of the criminal laws as contemplated by Cranman. If Officer Williams provided the dispatcher with Swan's name and date *1083 of birth, his Social Security number, or his driver's license number, the dispatcher could have easily determined whether the outstanding warrant appearing in the NCIC database was issued for the arrest of the Michael Swan involved in the instant case.[10] His apparent failure to do so can hardly be described as the exercise of discretion, regardless of whether a degree of analysis that some would call dissection is necessary to reach that conclusion. Therefore, I respectfully dissent from the majority opinion insofar as it grants Hueytown immunity from liability for the actions of the dispatcher.
HARWOOD and WOODALL, JJ., concur.
NOTES
[1] This case was reassigned to Justice See on February 24, 2005.
[2] Swan has since settled his claims against the City of Birmingham.
[3] Under the discretionary-function/ministerial-act test, the Court had posed the immunity issue as follows:

"1) Is the suit against the individual State employee, in effect, a suit against the State? and 2) Under the allegations of tortious injury, is the employee defendant entitled to substantive immunity because she was engaged in the exercise of a discretionary public function?"
DeStafney v. University of Alabama, 413 So.2d 391, 395 (Ala.1981).
[4] But see Lee v. Minute Stop, Inc., 874 So.2d 505, 514 (Ala.2003)("Cranman applies to State-agent immunity, not to the immunity granted to police officers by § 6-5-338, Ala. Code 1975, but, assuming without deciding that the Cranman principles applied, we believe that the municipal officers would be immune under the facts of this case.").
[5] This Court has stated that "[m]inisterial actions include daily administrative activities." City of Bayou La Batre, 785 So.2d at 1132. "`A ministerial act envisions direct adherence to a governing rule or standard with a compulsory result. It is performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action.'" Ex parte Alabama Dep't of Forensic Sciences, 709 So.2d 455, 458 (Ala.1997)(quoting 57 Am.Jur.2d Municipal, County, School & State Tort Liability § 119 (1988)).
[6] "`Performance of a discretionary function requires an exercise in judgment and choice as to what is proper and just under the circumstances. It involves the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.... A function is discretionary when it devolves to the officer to determine whether he should perform a certain act and, if so, in what particular way. If a public employee is required to decide and act without fixed or readily ascertainable standards, that act is a discretionary function.'"

Ex parte Alabama Dep't of Forensic Sciences, 709 So.2d at 458 (quoting 57 Am.Jur.2d Municipal, County, School & State Tort Liability § 119).
[7] See Ex parte Hudson, 866 So.2d 1115, 1125-26 (Ala.2003)(See, J., dissenting).
[8] We note that in gathering information and arresting Swan, Officer Williams was "exercising judgment in the enforcement of the criminal laws" within the meaning of Cranman. Similarly, then, when the dispatcher telephoned the City of Birmingham to confirm the existence of the warrant, the dispatcher elected to provide the City of Birmingham with certain of the information provided in the NCIC check, which lists the suspect's name, date of birth, Social Security number, height, weight, and hair color, and the warrant information, including the "place number," the date the warrant was issued, the charge, and the entity that issued the warrant. In performing these tasks, the dispatcher was, like the officer in the field, exercising discretion.
[9] The City of Hueytown's immunity derives from the status of Officer Williams and of the dispatcher.
[10] The majority opinion states that Officer Williams testified that the NCIC screen for a particular suspect shows the suspect's name, date of birth, and Social Security number.