866 So.2d 1115 (2003)
Ex parte Russell HUDSON.
(In re Duane Haston, Jr., by and through his father and next friend, Duane Haston, Sr., and Duane Haston, Sr. v. C.F. Vigor High School, Mobile County School Board of Commissioners, Garner & Associates, Inc., and Interkal, Inc.).
1011148.
Supreme Court of Alabama.
March 14, 2003.
Rehearing Denied May 30, 2003.
*1116 Mark S. Boardman and Dana J. Bolden of Boardman, Carr, Weed & Hutcheson, P.C., Chelsea; and Bob Sherling, Jr., of Campbell, Duke & Sherling, Mobile, for petitioner.
Donald M. Briskman of Briskman & Binion, P.C., Mobile, for respondents Duane Haston, Sr., and Duane Haston, Jr.
PER CURIAM.
Russell Hudson, an employee with the Mobile County School System, petitioned this Court for a writ of mandamus directing the Mobile Circuit Court to dismiss all claims brought against him by Duane Haston, Jr., a former student at Vigor High School. We grant the petition in part, deny it in part, and issue the writ.
Russell Hudson started working for the Mobile County School System in 1984; at the time of this appeal he was a senior buyer in its purchasing department. In 1994, Hudson was the purchasing foreman in the school system's renovations department. His responsibilities included receiving bids, reviewing bids, ensuring that bidders met minimum bid specifications, making recommendations on the bids to the school board, and executing purchase orders. As purchasing foreman, Hudson's involvement with a project ended once the county board of education awarded a contract and the school system submitted the purchase orders to the vendor.
In March 1994, the Mobile County School System solicited bids for the delivery and installation of bleachers in the gym at C.F. Vigor High School. The bleachers were not to be stationary; they were to pull out when necessary for seating and to close against the wall when more floor space was needed in the gym. The school system ultimately contracted with Garner & Associates, Inc., to deliver and install bleachers manufactured by Interkal, Inc. Within the school system, a number of individuals from the purchasing, new construction, and renovations departments, including Hudson, worked to draft the bid specifications for the bleachers for Vigor High School. Once the school system had received bids from vendors, Hudson checked to ensure that the bids complied with the bid specifications and then made a recommendation to the school board as to which bid should be accepted. The school board made its decision, and once Hudson, or someone in his office, issued the purchase orders relating to the bleacher project, Hudson's work on the project ended. Hudson did not supervise the actual installation or maintenance of the bleachers at Vigor High School.
Garner & Associates claims that in October 1994, in connection with the Vigor bleacher project, it sent Hudson a bleacher maintenance manual. Hudson stated in his deposition that he did not recall having received the manual, but that if he had *1117 received it, he would have passed it on to the project site foreman, Clayton Haggett. Hudson stated that, though no one has ever told him that it was part of his job to forward maintenance manuals to job sites, if he received a manual or other similar documentation relating to a project, he usually would pass it along to the site foreman as part of his job.
On December 12, 1997, at the request of their gym teacher, Duane Haston and two other Vigor High School students tried to close the bleachers by pushing them towards the wall. The bleachers slipped off track and fell onto Haston, breaking his back. Haston, by and through his father and next friend Duane Haston, Sr., sued Russell Hudson and others alleging, among other claims, that Hudson had negligently inspected and maintained the bleachers at Vigor High School.
Hudson and the other individual-school-system-employee defendants moved for a summary judgment on the ground that they were protected by State-agent immunity. The trial court entered a summary judgment in favor of all of the individual-school-system-employee defendants except Hudson. The trial court's order denying Hudson's summary-judgment motion is not included in the materials submitted to this Court. Hudson moved for permission to appeal pursuant to Rule 5, Ala. R.App. P., and the trial court denied Hudson's motion. Hudson then petitioned this Court for the writ of mandamus.
"A writ of mandamus is an extraordinary remedy, and it `will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and properly invoked jurisdiction of the court.'"
Ex parte Butts, 775 So.2d 173, 176 (Ala. 2000) (quoting Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)). "[A] petition for a writ of mandamus is an appropriate means for seeking review of an order denying a claim of immunity." Id.
Hudson argues in his petition that he is entitled to State-agent immunity because, he says, all of his actions as purchasing foreman are discretionary functions, the execution of which is protected by immunity. Haston argues in reply that Hudson's duties are ministerial and that his actions are not entitled to State-agent or discretionary-function immunity.
We decline the parties' invitation to address the issues under the dichotomy of ministerial versus discretionary functions because this Court in Butts adopted the test for State-agent immunity suggested in Ex parte Cranman, 792 So.2d 392 (Ala. 2000). Butts, 775 So.2d at 178. Cranman "restate[d] ... the rule governing State-agent immunity." 792 So.2d at 405. In order to simplify the analysis of State-agent immunity issues, Cranman suggested certain categories of State-agent action where agents are immune in the exercise of their judgment, such as, for example, cases where an agent is:
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the *1118 State agent performs the duties in that manner...."
792 So.2d at 405 (emphasis added). Under Cranman, a plaintiff attempting to pierce a defense of State-agent immunity would have to demonstrate that a State agent was not exercising his or her judgment in the manner set forth in the examples in Cranman; that the agent had violated the Constitution or laws of the United States, or the Constitution or laws of Alabama or some regulation of this State; or that the agent had acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." 792 So.2d at 405.
Haston, resorting to the pre-Cranman dichotomy of ministerial and discretionary function, argues that Hudson is not entitled to State-agent immunity because, he says, Hudson was not engaged in a discretionary function. Haston argues (1) that Hudson was under a legal duty to inspect the bleachers; (2) that Hudson's role in evaluating the bids for the bleachers was ministerial; and (3) that Hudson had a ministerial duty to pass along to the project foreman the maintenance manual provided by Interkal for the bleachers and that Hudson's failure to carry out this duty was negligent or wanton behavior. We address the issues in the context of whether in regards to his actions relating to the bleachers Hudson was involved in the exercise of judgment within the framework of the examples set forth in Cranman.
Haston argues that a regulatory scheme imposes a duty on Hudson to inspect the bleachers and that Hudson failed to carry out this duty. Haston cites a National Fire Protection Association ("NFPA") rule that stipulates "[a]n annual inspection and required maintenance of each grandstand shall be performed to assure safe conditions. At least biennially the inspection shall be performed by a professional engineer or qualified service personnel."[1] Haston indicates that compliance with this rule became part of Hudson's job because NFPA codes were incorporated by reference into the bid specifications for the Vigor High School bleachers. Haston further argues that Hudson would be the person responsible for inspecting the bleachers because his job as purchasing foreman required him to ensure that vendors complied with the bid specifications.
Hudson argues that the facts do not support Haston's argument. Thomas Duncan, who directed the renovation projects for Mobile County public schools at the time the bid was awarded for the Vigor High School bleachers, testified in his deposition that Bobby Nelson, the facilities planner for the Mobile County public schools, was responsible for hiring an engineer to inspect the bleachers. According to Duncan, Hudson, as the purchasing foreman, had no duty to inspect the completed projects. Duncan testified that Hudson checked that bids met bid specifications, not that the completed work met contract specifications.
Hudson also argues that his duties as purchasing foreman were not ministerial. Again, we recast this issue into the context of the exercise of judgment within the *1119 framework of the Cranman analysis. Bid proposals necessarily incorporate safety codes, and Hudson's job required him to analyze those codes in evaluating bids on specific projects. Hudson's activities are comparable to the activities referred to in Cranman as a state agent's "exercising his or her judgment ... [in] ... allocating resources [or] negotiating contracts." 792 So.2d at 405.
In Ex parte Spivey, 846 So.2d 322 (Ala. 2002), a student injured while using a saw that did not have a required safety fence sued his teacher and the teacher's supervisor, Spivey, alleging that they were liable for failing to follow safety rules. In Spivey, this Court held that "the general requirement imposed by Spivey's job description that he `[i]mplement safety instruction and practices' does not remove Spivey's judgment in determining" whether the teachers or the students followed safe practices. 846 So.2d at 327. Hudson's responsibility to apply safety rules to analyze bids is analogous to Spivey's responsibility to apply safety rules to the conduct of students and subordinate teachers.
Haston argues in his brief to this Court that "the Southern Building Code, American Disability Act [sic], and the National Fire Protection Association [rules] are all applicable to the maintenance and inspection of the bleachers. As a result, there was a legal requirement that the inspection be conducted on an annual basis for safety." Hudson says that he does not follow the Southern Building Code, the NFPA, or some other code when he evaluates a bid; instead, he uses such codes as one of several evaluative tools to gauge whether a bid makes the best use of school resources and whether a bid meets a project's specifications. Hudson argues that the inclusion of rules within the contract should apply to a bid analyst only to the extent that those rules bear upon the subject matter of the contract, and not its performance.
We conclude that Hudson is entitled to State-agent immunity as to the claims that Hudson failed to properly evaluate the bids for the bleachers and failed to inspect the bleachers.
Haston finally argues that Hudson's job included passing along the maintenance manual he received from Garner & Associates for the bleachers to the project foreman, that doing so was a ministerial duty, and that Hudson's failure to carry out this duty is negligent or wanton behavior. Again, we recast the issue in terms of the standard set forth in Cranman. The complete test announced in Cranman and embraced in Butts is as follows:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
*1120 "(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."
792 So.2d at 405. Forwarding a maintenance manual does not fall within the parameters of the exercise of judgment described in the preceding illustrative examples set forth in Cranman, and Hudson is not entitled to State-agent immunity as to this claim.
This case is before us on a petition for the writ of mandamus. The petition cites Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000), for the proposition that "[w]hile the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus." We confine our interlocutory review to matters germane to the issue of immunity. Matters relevant to the merits of the underlying tort claim, such as issues of duty or causation, are best left to the trial court on remand. See Ryan v. Hayes, 831 So.2d 21, 32 (Ala.2002) (recognizing that the defense of immunity should, as a general rule, be determined as a threshold issue, thereby avoiding "development of unnecessarily restricted principles of tort law driven by the need to accommodate principles of State-agent immunity"). We therefore do not address contentions with respect to the absence of information in the materials before us as to what a responsible person might have done, notwithstanding the availability of the manual, and whether safety statutes and codes, rather than a maintenance manual, are the appropriate source of any duty. Those matters are for the trial court.
The trial court's denial of Hudson's motion for a summary judgment was proper only as to the issue of his liability arising out of the alleged failure to forward the maintenance manual; the parties are entitled to conduct further proceedings only as to that issue. We therefore deny Hudson's petition for a writ of mandamus only as to Haston's claim that Hudson was negligent or wanton in failing to forward the maintenance manual on the bleachers to the project foreman. As to Haston's remaining claims, we conclude that Hudson has a "clear legal right" to a summary judgment in his favor on the basis of State-agent immunity. The trial court is ordered to vacate its order denying a summary judgment for Hudson, and to enter a summary judgment in his favor as to all of Haston's claims except the claim alleging negligence or wantonness in the failure to forward the maintenance manual.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
HOUSTON, LYONS, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
*1121 BROWN and STUART, JJ., concur in part and dissent in part.
MOORE, C.J., concurs in the result in part and dissents in part.
SEE, J., dissents.
BROWN, Justice (concurring in part and dissenting in part).
I respectfully dissent from the portion of the majority's opinion denying the petition. I believe that the defendant, Russell Hudson, has demonstrated that he is entitled to State-agent immunity as to all of the claims and that the trial court erred in denying his motion for a summary judgment. I would therefore grant the petition for the writ of mandamus as to all claims asserted by Duane Haston.
STUART, J., concurs.
MOORE, Chief Justice (concurring in the result in part and dissenting in part).
I concur in denying the petition for the writ of mandamus as to the issue whether Russell Hudson was negligent or wanton in failing to forward the maintenance manual for the bleachers to the project foreman. I dissent from the granting of the petition for the writ of mandamus as to Duane Haston's other claims against Hudson. With regard to those claims, I believe mandamus is an improper remedy because another adequate legal remedy appealis available.
SEE, Justice (dissenting).
I respectfully dissent. I believe that the defendant, Russell Hudson, is entitled to State-agent immunity as to all claims.
In 1994, Russell Hudson was the purchasing foreman in the renovation department of the Mobile County School System. His responsibilities included receiving bids from vendors on, and materials about, prospective and ongoing projects; reviewing those bids; making recommendations to the school board as to the bids; executing purchase orders; forwarding project materials to site foremen and other appropriate people; and ensuring that bidders met minimum bid specifications before the school system awarded a contract for a renovation project. As purchasing foreman, Hudson's involvement with a project ended once the county board of education awarded the contract and the purchase order was forwarded by the school system to the vendor.
On December 12, 1997, Duane Haston, a Vigor High School student, was injured when a set of bleachers purchased while Hudson was purchasing foreman fell on him in the school gym. Haston, by and through his father and next friend Duane Haston, Sr., sued Russell Hudson and others alleging, among other claims, that Hudson had negligently inspected and maintained the bleachers at Vigor High School.
Hudson argues in his mandamus petition that he is entitled to State-agent immunity because, he says, all of his actions as purchasing foreman for the Mobile County School System are protected discretionary functions subject to immunity. Haston responds that Hudson's duties are ministerial and, therefore, that Haston is not entitled to State-agent or discretionary-function immunity. He argues that Hudson's duties specifically included passing along to the proper people in the school system a maintenance manual for the bleachers that Hudson's office allegedly received from Garner & Associates, Inc., the company that installed the bleachers, and that that duty is ministerial. Haston alleges that Hudson failed to carry out this allegedly ministerial duty by failing to forward the manual, that this failure caused the bleachers not to be inspected and not to be properly maintained, and *1122 that Hudson's alleged failure to forward the manual constitutes negligent or wanton behavior, making Hudson liable to Haston.
The majority "decline[s] the parties' invitation to address the issues under the dichotomy of ministerial versus discretionary functions," 866 So.2d at 1117, and instead "recast[s] this issue," 866 So.2d at 1118, using the vocabulary of Ex parte Cranman, which "suggested certain categories of State-agent action where agents are immune in the exercise of their judgment." 866 So.2d at 1117. In Cranman, "the [State-employed] physicians argue[d] that decision-making exercised by a physician in treating a patient should be entitled to immunity because... such decision-making inherently involves the utmost discretion...." 792 So.2d at 406. The Cranman Court rejected the physicians' argument and held that although the physicians' work involved the exercise of judgment, the physicians did not exercise judgment "within any category of conduct recognized by the restated rule as immune." 792 So.2d at 406.
In this case, the majority holds that Hudson's duties as purchasing foreman "are comparable to the activities referred to in Cranman as a state agent's `exercising his or her judgment ... [in] ... allocating resources [or] negotiating contracts.'" 866 So.2d 1119 (quoting Cranman, 792 So.2d at 405)(alterations in the main opinion). The majority also holds, however, that "[f]orwarding a maintenance manual does not fall within the parameters of the exercise of judgment described in the preceding illustrative examples set forth in Cranman." 866 So.2d at 1120.
Thus, the majority effectively creates a two-step Cranman test. To qualify for State-agent immunity, the State-agent, first, must fall within one of the Cranman categories (for example, formulating plans, administering an agency, discharging certain duties);[2] then, second, the specific action complained of must be an action that "fall[s] within the parameters of the exercise of judgment described in the ... illustrative examples set forth in Cranman." 866 So.2d at 1120.
I dissented in Cranman because I was concerned that its application would intrude on the constitutional balance of powers embodied in the Constitution of Alabama of 1901.[3] Nonetheless, because the *1123 pre-Cranman discretionary function/ministerial duty test was itself a court-created[4] test, when it became clear that the test set out in Cranman had become the law of Alabama, I ceased dissenting in "Cranman cases." See Ex parte Mobile County Dep't of Human Res., 815 So.2d 527, 532 (Ala. 2001)(See, J., concurring specially)("Although I disagreed with the discretionary-immunity rule suggested by the plurality in Ex parte Cranman ... and subsequently adopted by this Court in Ex parte Butts, 775 So.2d 173, at 177-78 (Ala.2000), it is now the law of the State of Alabama. I therefore concur."). When the Cranman plurality stated that a State-agent would be immune when "exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as... negotiating contracts ...," 792 So.2d at 405, the plurality appeared to offer the benefit of an easy-to-apply, "bright-line" standard for determining whether an individual was covered by State-agent immunity.
In the case before us today, the majority apparently finds that Hudson is a State-agent, that is, that he meets the first criterion for the application of State-agent immunity, namely, that his job falls sufficiently within the first of the named Cranman categories. 866 So.2d at 1119 ("Hudson's activities are comparable to the activities referred to in Cranman as a state agent's `exercising his or her judgment... [in] ... allocating resources [or] negotiating contracts.'"). The majority, nevertheless, holds that "[f]orwarding a maintenance manual does not fall within the parameters of the exercise of judgment described in the ... illustrative examples set forth in Cranman," 866 So.2d at 1120, thereby holding that Hudson has failed to satisfy the second step in the State-agent immunity test.
The majority cites no authority that defines or delimits what part of the exercise of judgment in "allocating resources [or] negotiating contracts" is entitled to protection, and what part is not entitled to protection.[5] The majority does not articulate *1124 any principle that would permit a State-agent defendant in Hudson's position or a plaintiff in Haston's position to discern when an exercise of judgment lies within the "examples" set forth in Cranman, and when an exercise of judgment lies outside those "examples."[6] The majority does not explain why the judgments Hudson makes when he reviews a bid according to preestablished formulas such as statutorily mandated fire codes are entitled to immunity,[7] but the judgments he makes regarding whether and how to distribute the materials he receives and reviews in conjunction with the bid process are not entitled to immunity.
It appears that this Court today comes almost full circle. Before Cranman, the test applied to State actors was whether their acts were discretionary or ministerial. Today, the Court tells us that sovereign immunity applies only to selected State actors, namely, the five court-created categories of actors selected by the Cranman plurality.[8] For those State actors who fall within one of the five categories, a further test is to be applied, one that sounds suspiciously like the old discretionary function/ministerial duty test. We are to decide whether the specific act for which liability is being sought against the State actor is an exercise of judgment or is ministerial. In my dissent in Cranman, I noted that generally "the discretionary/ministerial determination will dictate whether discretionary-function immunity is available to the State agent or not." 792 So.2d at 414 (See, J., dissenting). "`A ministerial act envisions direct adherence to a governing rule or standard with a compulsory result. It is performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action.'" Ex parte Alabama Dep't of Forensic Sciences, 709 So.2d 455, 458 (Ala.1997)(quoting 57 Am.Jur.2d Municipal, County, School and State Tort Liability § 120 (1988)). By way of contrast, a discretionary function
"`requires an exercise in judgment and choice as to what is proper.... It involves the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned *1125 conclusions, and acting on them in a way not specifically directed.... A function is discretionary when it devolves to the officer to determine whether he should perform a certain act and, if so, in what particular way.'"
709 So.2d at 458 (quoting 57 Am.Jur.2d § 119). Thus, I have no objection to stating expressly what I believe was already the law, that to qualify for State-agent immunity the actor against whom liability is being sought must have exercised judgment. However, I must again object to the arbitrary exclusion of State actors from the application of the doctrine.[9]
I noted in Cranman that, "where the officer is expected to exercise judgment, this Court encroaches on executive or legislative powers when it imposes liability on that officer for his decision, thereby impermissibly affecting the decision-making of a coordinate branch of government." 792 So.2d 392, 414 (See, J., dissenting). State-agent immunity is intended, in part, to prevent a State agent from being so burdened by legal actions that he is incapable of properly performing his job.
The theory of the majority decision in this case is that this Court, first, has selected only certain State actors to whom the doctrine of sovereign immunity will apply, and, next, when an action is brought, the trial court will examine each step of a qualified actor's conduct to determine whether any step was ministerial.[10] If the State agent failed to perform a ministerial step, the alleged failure to perform will subject the State agent to a trial for a jury to decide whether that failure was the cause of an injury. Therefore, contrary to the balancing of interests intended in the constitution, the harm of spending time in litigation is imposed on State actors. See Cranman 792 So.2d at 415-16 (See, J., dissenting)(arguing that the rule announced in Cranman was counter *1126 to the "balancing of the policies of §§ 13, 14, and 43, of the Constitution of Alabama of 1901"). In practice, application of this two-part Cranman test as it is being applied today will mean that after sufficient discovery, a well-drafted pleading will survive a motion to dismiss on State-agent immunity grounds because some aspect of the State-agent's job will always be found to be ministerial; therefore, the agent will not be immune from suit as to that ministerial act, which can then be linked to the injury in much the way Thomas Wolfe links our lives to the London cutpurse's going unhung.[11]
Hudson argues in his mandamus petition that in his case, "any duty of his which may have been associated with the repair and maintenance of the bleachers would substantially fall within the planning level activities of the bid proposals he was actively involved in preparing on the [school board's] behalf." (Petition at 25.) Hudson further argues that "even assuming Mr. Hudson actually received the bleacher maintenance manual and failed to pass it along, his decision not to inspect should not be second guessed in hindsight.... Mr. Hudson's failure to act here, like the defendants in [Byrd v. Sullivan, 657 So.2d 830 (Ala.1995) ], may be questionable or subject to criticism, but his actions involved his `personal deliberations, decisions, and judgments in the performance of [his] job' as purchasing foreman." (Petition at 28-29, citing Byrd v. Sullivan, 657 So.2d 830, 833 (Ala.1995) (quoting White v. Birchfield, 582 So.2d 1085, 1087 (Ala. 1991))).
The majority does not explain why in the case before us Hudson is entitled to State-agent immunity as to some of the document analysis he performed as purchasing foreman, but not entitled to State-agent immunity as to the rest of the document analysis he performed as purchasing foreman. In this case, even assuming that Hudson had a ministerial duty to pass along maintenance manuals, Hudson was required to exercise judgment in determining what materials he must pass along to what other people in the school system.
I believe that Hudson demonstrates that he is entitled to the mandamus relief he seeks. I believe that Hudson is entitled to State-agent immunity because he was exercising judgment in his capacity as the purchasing foreman for the school system, and I am not prepared to parse his performance of that responsibility into elemental parts. I therefore dissent.
NOTES
[1] Haston introduces in support of this claim a one-page photocopy of a portion of rules that appear to be from the NFPA. Haston does not offer a title for the document, nor does anything on the page actually indicate that the document represents NFPA rules in force at the time of the accident. Haston cites in his brief to § 102-5-6.2(c) (1995), but he fails to produce a photocopy of that section with his supporting exhibits. The photocopy Haston provides in his exhibits accompanying his brief would be cited § 102-16-5-8.2(c). The bottom of the page in the exhibit indicates that the photocopy comes from a 1992 edition of the work.
[2] Cranman held:

"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students."
792 So.2d at 405.
[3] I stated in Cranman:

"Discretionary-function immunity requires a balancing of the competing policies of the right to a remedy, Art. I, § 13, Ala. Const. of 1901, and sovereign immunity, Art. I, § 14, Ala. Const. of 1901, in light of the separation-of-powers principle of Art. III, § 43, Ala. Const. of 1901. Historically, this balancing was commonly accomplished by determining whether the State-agent's actions were `discretionary' or were `ministerial.' See, e.g., Taylor v. Shoemaker, 605 So.2d 828 (Ala.1992); Phillips v. Thomas, 555 So.2d 81 (Ala.1989); Bell v. Chisom, 421 So.2d 1239 (Ala.1982); DeStafney v. University of Alabama, 413 So.2d 391 (Ala. 1981)."
792 So.2d at 413-14 (See, J., dissenting; footnotes omitted).
[4] In DeStafney v. University of Alabama, 413 So.2d 391, 395 (Ala.1981), the Court adopted the discretionary function/ministerial duty dichotomy. The Court stated the issue as follows:

"In the instant case, then, the dispositive issue is twofold: 1) Is the suit against the individual State employee, in effect, a suit against the State? and 2) Under the allegations of tortious injury, is the employee defendant entitled to substantive immunity because she was engaged in the exercise of a discretionary public function?"
413 So.2d at 395. The Court then held:
"[T]he Restatement's [(Second) of Torts (1974)] doctrine of substantive immunity may yet be invoked if the official or employee 1) is engaged in the exercise of a discretionary function; 2) is privileged and does not exceed or abuse the privilege; or 3) is not negligent in the performance of his responsibility."
413 So.2d at 395.
[5] I objected that the Cranman opinion itself was not well-founded, because the method it used to hold that the defendant physicians were not entitled to State-agent immunity was, first, to create categories of immunity, and then to find that "the defendant physicians are not entitled to State-agent immunity because they `[do] not fit within any category of conduct recognized by the restated rule as immune.'" 792 So.2d at 416 (See, J., dissenting)(alterations in original).
[6] One problem with Cranman's "illustrative examples" is that they are not analytically discrete categories. For example, category 3 in Cranman states that a State-agent is immune when "discharging duties imposed ... by statute, rule, or regulation ..." 792 So.2d at 405. Category 4 states that a State-agent is immune when "exercising judgment in the enforcement of the criminal laws of the State...." 792 So.2d at 405.
[7] The majority states: "Bid proposals necessarily incorporate safety codes, and Hudson's job required him to analyze those codes in evaluating bids on specific projects." 866 So.2d at 1119. The majority then finds that this exercise of judgment is immune. 866 So.2d at 1120.
[8] Cranman analysis is limited only to questions of State-agent immunity. 792 So.2d at 405 ("We therefore restate the rule governing State-agent immunity...."). There are other sources of immunity as well. The State itself is immune from suit under § 14, Ala. Const. 1901. "An action against a sheriff is `essentially a suit against the state' ... Accordingly, we have held: `[A] sheriff ... is immune ... from suit....'" King v. Colbert County, 620 So.2d 623, 626 (Ala.1993). Judges are immune from suit under the doctrine of "judicial immunity." See, e.g., City of Bayou La Batre v. Robinson, 785 So.2d 1128, 1132-34 (Ala.2000); Almon v. Gibbs, 545 So.2d 18, 19-20 (Ala.1989). The Court has extended judicial immunity to cover "magistrates and clerks of court." City of Bayou La Batre, 785 So.2d at 1133.
[9] In Cranman this Court recognized that "the State's immunity is constitutionally based, [and] neither the Alabama Legislature nor this Court has the power to waive the State's immunity from suit." 792 So.2d at 399 (footnotes omitted). The Cranman plurality also conceded that "the vulnerability of State agents to suit, if not constrained, could lead to excessive judicial interference in the affairs of coequal branches of government, contrary to § 43, [Ala. Const. of 1901]." 792 So.2d at 400-01. In Armory Commission of Alabama v. Staudt, 388 So.2d 991, 992 (Ala.1980), this Court observed: "Whether a governmental body is immune from suit cannot turn on labels placed on the body by the legislature. Were it otherwise, the legislature could circumvent the constitutional prohibition by merely delegating a state function to a separate legal entity...." Similarly, insofar as immunity is mandated by § 14, Ala. Const. of 1901, this Court cannot simply relabel State agents in order to deny them immunity from suit.
[10] In order to apply the new two-part Cranman analysis, the main opinion breaks Hudson's duties down into a series of discrete tasks, and then evaluates each aspect of Hudson's job to see if that particular function is immune. The main opinion first states: "Hudson also argues that his duties as purchasing foreman were not ministerial. Again, we recast this issue into the context of the exercise of judgment within the framework of the Cranman analysis." 866 So.2d at 1118-19. The main opinion then considers how Hudson reviewed contracts: "Bid proposals necessarily incorporate safety codes, and Hudson's job required him to analyze those codes in evaluating bids on specific projects." 866 So.2d at 1119. The main opinion concludes that that task falls under Cranman protection. The main opinion's analysis continues, however: "Haston finally argues that Hudson's job included passing along the maintenance manual he received from Garner & Associates for the bleachers ... [and] that doing so was a ministerial duty.... Again, we recast the issue in terms of the standard set forth in Cranman." 866 So.2d at 1119. The majority then holds that Hudson's duty of "[f]orwarding a maintenance manual does not fall within ... the exercise of judgment described ... in Cranman." 866 So.2d at 1120.
[11] Thomas Wolfe, Look Homeward, Angel 3 (Charles Scribner's Sons 1957):

"Each of us is all the sums he has not counted: subtract us into nakedness and night again, and you shall see begin in Crete four thousand years ago the love that ended yesterday in Texas.
"The seed of our destruction will blossom in the desert, the alexin of our cure grows by a mountain rock, and our lives are haunted by a Georgia slattern, because a London cutpurse went unhung. Each moment is the fruit of forty thousand years. The minute-winning days, like flies, buzz home to death, and every moment is a window on all time."