PER CURIAM.
Russell Hudson, an employee with the Mobile County School System, petitioned this Court for a writ of mandamus directing the Mobile Circuit Court to dismiss all claims brought against him by Duane Ha-ston, Jr., a former student at Vigor High School. We grant the petition in part, deny it in part, and issue the writ.
Russell Hudson started working for the Mobile County School System in 1984; at the time of this appeal he was a senior buyer in its purchasing department. In 1994, Hudson was the purchasing foreman in the school system’s renovations department. His responsibilities included receiving bids, reviewing bids, ensuring that bidders met minimum bid specifications, making recommendations on the bids to the school board, and executing purchase orders. As purchasing foreman, Hudson’s involvement with a project ended once the county board of education awarded a contract and the school system submitted the purchase orders to the vendor.
In March 1994, the Mobile County School System solicited bids for the delivery and installation of bleachers in the gym at C.F. Vigor High School. The bleachers were not to be stationary; they were to pull out when necessary for seating and to close against the wall when more floor space was needed in the gym. The school system ultimately contracted with Garner & Associates, Inc., to deliver and install bleachers manufactured by In-terkal, Inc. Within the school system, a number of individuals from the purchasing, new construction, and renovations departments, including Hudson, worked to draft the bid specifications for the bleachers for Vigor High School. Once the school system had received bids from vendors, Hudson checked to ensure that the bids complied with the bid specifications and then made a recommendation to the school board as to which bid should be accepted. The school board made its decision, and once Hudson, or someone in his office, issued the purchase orders relating to the bleacher project, Hudson’s work on the project ended. Hudson did not supervise the actual installation or maintenance of the bleachers at Vigor High School.
Garner & Associates claims that in October 1994, in connection with the Vigor bleacher project, it sent Hudson a bleacher maintenance manual. Hudson stated in his deposition that he did not recall having received the manual, but that if he had *1117 received it, he would have passed it on to the project site foreman, Clayton Haggett. Hudson stated that, though no one has ever told him that it was part of his job to forward maintenance manuals to job sites, if he received a manual or other similar documentation relating to a project, he usually would pass it along to the site foreman as part of his job.
On December 12, 1997, at the request of their gym teacher, Duane Haston and two other Vigor High School students tried to close the bleachers by pushing them towards the wall. The bleachers slipped off track and fell onto Haston, breaking his back. Haston, by and through his father and next friend Duane Haston, Sr., sued Russell Hudson and others alleging, among other claims, that Hudson had negligently inspected and maintained the bleachers at Vigor High School.
Hudson and the other individual-school-system-employee defendants moved for a summary judgment on the ground that they were protected by State-agent immunity. The trial court entered a summary judgment in favor of all of the individual-school-system-employee defendants except Hudson. The trial court’s order denying Hudson’s summary-judgment motion is not included in the materials submitted to this Court. Hudson moved for permission to appeal pursuant to Rule 5, Ala. R.App. P., and the trial court denied Hudson’s motion. Hudson then petitioned this Court for the writ of mandamus.
“A writ of mandamus is an extraordinary remedy, and it ‘will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and properly invoked jurisdiction of the court.’ ”
Ex parte Butts, 775 So.2d 173, 176 (Ala.2000) (quoting Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)). “[A] petition for a writ of mandamus is an appropriate means for seeking review of an order denying a claim of immunity.” Id.
Hudson argues in his petition that he is entitled to State-agent immunity because, he says, all of his actions as purchasing foreman are discretionary functions, the execution of which is protected by immunity. Haston argues in reply that Hudson’s duties are ministerial and that his actions are not entitled to State-agent or discretionary-function immunity.
We decline the parties’ invitation to address the issues under the dichotomy of ministerial versus discretionary functions because this Court in Butts adopted the test for State-agent immunity suggested in Ex parte Cranman, 792 So.2d 392 (Ala.2000). Butts, 775 So.2d at 178. Cranman “restate[d] ... the rule governing State-agent immunity.” 792 So.2d at 405. In order to simplify the analysis of State-agent immunity issues, Cranman suggested certain categories of State-agent action where agents are immune in the exercise of their judgment, such as, for example, cases where an agent is:
“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
“(b) allocating resources;
“(c) negotiating contracts;
“(d) hiring, firing, transferring, assigning, or supervising personnel; or
“(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the *1118 State agent performs the duties in that manner.... ”
792 So.2d at 405 (emphasis added). Under Cranman, a plaintiff attempting to pierce a defense of State-agent immunity would have to demonstrate that a State agent was not exercising his or her judgment in the manner set forth in the examples in Cranman; that the agent had violated the Constitution or laws of the United States, or the Constitution or laws of Alabama or some regulation of this State; or that the agent had acted “willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.” 792 So.2d at 405.
Haston, resorting to the pre-Cranman dichotomy of ministerial and discretionary function, argues that Hudson is not entitled to State-agent immunity because, he says, Hudson was not engaged in a discretionary function. Haston argues (1) that Hudson was under a legal duty to inspect the bleachers; (2) that Hudson’s role in evaluating the bids for the bleachers was ministerial; and (3) that Hudson had a ministerial duty to pass along to the project foreman the maintenance manual provided by Interkal for the bleachers and that Hudson’s failure to carry out this duty was negligent or wanton behavior. We address the issues in the context of whether in regards to his actions relating to the bleachers Hudson was involved in the exercise of judgment within the framework of the examples set forth in Cranman.
Haston argues that a regulatory scheme imposes a duty on Hudson to inspect the bleachers and that Hudson failed to carry out this duty. Haston cites a National Fire Protection Association (“NFPA”) rule that stipulates “[a]n annual inspection and required maintenance of each grandstand shall be performed to assure safe conditions. At least biennially the inspection shall be performed by a professional engineer or qualified service personnel.”[1] Ha-ston indicates that compliance with this rule became part of Hudson’s job because NFPA codes were incorporated by reference into the bid specifications for the Vigor High School bleachers. Haston further argues that Hudson would be the person responsible for inspecting the bleachers because his job as purchasing foreman required him to ensure that vendors complied with the bid specifications.
Hudson argues that the facts do not support Haston’s argument. Thomas Duncan, who directed the renovation projects for Mobile County public schools at the time the bid was awarded for the Vigor High School bleachers, testified in his deposition that Bobby Nelson, the facilities planner for the Mobile County public schools, was responsible for hiring an engineer to inspect the bleachers. According to Duncan, Hudson, as the purchasing foreman, had no duty to inspect the completed projects. Duncan testified that Hudson checked that bids met bid specifications, not that the completed work met contract specifications.
Hudson also argues that his duties as purchasing foreman were not ministerial. Again, we recast this issue into the context of the exercise of judgment within the *1119 framework of the Cranman analysis. Bid proposals necessarily incorporate safety codes, and Hudson’s job required him to analyze those codes in evaluating bids on specific projects. Hudson’s activities are comparable to the activities referred to in Cranman as a state agent’s “exercising his or her judgment ... [in] ... allocating resources [or] negotiating contracts.” 792 So.2d at 405.
In Ex parte Spivey, 846 So.2d 322 (Ala.2002), a student injured while using a saw that did not have a required safety fence sued his teacher and the teacher’s supervisor, Spivey, alleging that they were liable for failing to follow safety rules. In Spivey, this Court held that “the general requirement imposed by Spivey’s job description that he ‘[ijmplement safety instruction and practices’ does not remove Spivey’s judgment in determining” whether the teachers or the students followed safe practices. 846 So.2d at 327. Hudson’s responsibility to apply safety rules to analyze bids is analogous to Spivey’s responsibility to apply safety rules to the conduct of students and subordinate teachers.
Haston argues in his brief to this Court that “the Southern Building Code, American Disability Act [sic], and the National Fire Protection Association [rules] are all applicable to the maintenance and inspection of the bleachers. As a result, there was a legal requirement that the inspection be conducted on an annual basis for safety.” Hudson says that he does not follow the Southern Building Code, the NFPA, or some other code when he evaluates a bid; instead, he uses such codes as one of several evaluative tools to gauge whether a bid makes the best use of school resources and whether a bid meets a project’s specifications. Hudson argues that the inclusion of rules within the contract should apply to a bid analyst only to the extent that those rules bear upon the subject matter of the contract, and not its performance.
We conclude that Hudson is entitled to State-agent immunity as to the claims that Hudson failed to properly evaluate the bids for the bleachers and failed to inspect the bleachers.
Haston finally argues that Hudson’s job included passing along the maintenance manual he received from Garner & Associates for the bleachers to the project foreman, that doing so was a ministerial duty, and that Hudson’s failure to carry out this duty is negligent or wanton behavior. Again, we recast the issue in terms of the standard set forth in Cran-man. The complete test announced in Cranman and embraced in Butts is as follows:
“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“(1) formulating plans, policies, or designs; or
“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
“(b) allocating resources;
“(c) negotiating contracts;
“(d) hiring, firing, transferring, assigning, or supervising personnel; or
“(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
*1120 “(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or
“(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
792 So.2d at 405. Forwarding a maintenance manual does not fall within the parameters of the exercise of judgment described in the preceding illustrative examples set forth in Cranman, and Hudson is not entitled to State-agent immunity as to this claim.
This case is before us on a petition for the writ of mandamus. The petition cites Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000), for the proposition that “[wjhile the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus.” We confine our interlocutory review to matters germane to the issue of immunity. Matters relevant to the merits of the underlying tort claim, such as issues of duty or causation, are best left to the trial court on remand. See Ryan v. Hayes, 831 So.2d 21, 32 (Ala.2002) (recognizing that the defense of immunity should, as a general rule, be determined as a threshold issue, thereby avoiding “development of unnecessarily restricted principles of tort law driven by the need to accommodate principles of State-agent immunity”). We therefore do not address contentions with respect to the absence of information in the materials before us as to what a responsible person might have done, notwithstanding the availability of the manual, and whether safety statutes and codes, rather than a maintenance manual, are the appropriate source of any duty. Those matters are for the trial court.
The trial court’s denial of Hudson’s motion for a summary judgment was proper only as to the issue of his liability arising out of the alleged failure to forward the maintenance manual; the parties are entitled to conduct further proceedings only as to that issue. We therefore deny Hudson’s petition for a writ of mandamus only as to Haston’s claim that Hudson was negligent or wanton in failing to forward the maintenance manual on the bleachers to the project foreman. As to Haston’s remaining claims, we conclude that Hudson has a “clear legal right” to a summary judgment in his favor on the basis of State-agent immunity. The trial court is ordered to vacate its order denying a summary judgment for Hudson, and to enter a summary judgment in his favor as to all of Haston’s claims except the claim alleging negligence or wantonness in the failure to forward the maintenance manual.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
HOUSTON, LYONS, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
*1121 BROWN and STUART, JJ., concur in part and dissent in part.
MOORE, C.J., concurs in the result in part and dissents in part.
SEE, J., dissents.

. Haston introduces in support of this claim a one-page photocopy of a portion of rules that appear to be from the NFPA. Haston does not offer a title for the document, nor does anything on the page actually indicate that the document represents NFPA rules in force at the time of the accident. Haston cites in his brief to § 102-5-6.2(c) (1995), but he fails to produce a photocopy of that section with his supporting exhibits. The photocopy Haston provides in his exhibits accompanying his brief would be cited § 102-16-5-8.2(c). The bottom of the page in the exhibit indicates that the photocopy comes from a 1992 edition of the work.